OWEN W. BUNKER and MERODEAN BUNKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bunker v. Commissioner
Docket No. 7696-75.
United States Tax Court
T.C. Memo 1979-174; 1979 Tax Ct. Memo LEXIS 353; 38 T.C.M. (CCH) 736; T.C.M. (RIA) 79174; May 1, 1979, Filed Glen M. Hatch, for the petitioners. Charles H. Cowley, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $22,234 deficiency in petitioners' income tax for 1972. Due to concessions by petitioners, the sole issue remaining is whether petitioners' 1972 sale of American National Bank stock qualifies for the installment method of reporting gain pursuant to section 453. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing their petitioner, petitioners Owen W. and Merodean Bunker *354 were residents of Sandy, Utah. In 1972 petitioners owned, directly and indirectly, 2,250 of the 27,920 shares of American National Bank ("American") stock. Petitioner Owen W. Bunker was chairman of American's board of directors. American was organized and operated as a national bank. Tracy Collins Bank and Trust Company ("Tracy") is a Utah chartered state bank. On or about October 13, 1971, petitioners and other shareholders of American for a consideration of 30 cents per share granted Tracy options to purchase their shares of American stock for $90 per share. The options' terms provided that upon exercise the optionors could elect either of two methods of selling their stock: (1) they could elect to receive for each share $70 cash, less the 30 cents they had received as consideration for the option, plus one share of Valley American Corporation common stock, which had a fair market value of $20; or (2) they could elect to receive for each share $6 in cash, less the 30 cents per share for the option, plus a $64 five-year, seven-percent subordinated note of Tracy, plus one share of Valley American Corporation stock. The purpose of the latter method was to allow the sales of American *355 stock to qualify for the installment method of reporting gain under section 453. Tracy had the right to exercise the option at any time after execution and on or before 35 days after approval of a merger between American and Tracy by specified government regulatory agencies. If the governments approved the merger it was agreed that in lieu of the option Tracy would be bound to purchase the shares of American stock pursuant to the terms of the option agreement. If government approval were not received, Tracy was not obligated to exercise the option. In any case, the option lapsed if it were not exercised within ten months and ten days after the execution date. The agreement further provided that Tracy could assign the option to either Tracy Bancorp or John Dahlstrom, president of Tracy Bancorp. Tracy Bancorp was a Utah corporation registered as a bank holding company. Tracy was a wholly owned subsidiary of Tracy Bancorp. On October 31, 1971, Owen W. Bunker, in his capacity as a director of American, executed a merger agreement authorizing the merger of American into Tracy with Tracy as the surviving bank. The merger agreement was subject to approval by the Federal Deposit *356 Insurance Corporation, the Commissioner of Financial Institutions of the State of Utah and the stockholders of each of the parties. Dissenting American shareholders were to be paid $75 per share for surrender of their American stock. On February 9, 1972, Tracy assigned the option to its holding company parent, Tracy Bancorp, for $10 and other valuable consideration. Tracy was prohibited, under Utah banking law, from owning stock in American. Thus it was permissible for Tracy to own the option, but Tracy could not itself exercise it.
During the spring of 1972, Owen Bunker was notified by the managements of Tracy Bancorp and Tracy that the option had been assigned to Tracy Bancorp. Mr. Bunker was told that petitioners' stock would be purchased by Tracy Bancorp and that promissory notes for the balance due would be executed by Tracy Bancorp. After review of a financial statement of Tracy Bancorp, petitioners were satisfied of Tracy Bancorp's ability to meet the payments on a promissory note. Mr. Bunker was not aware, however, that Tracy Bancorp would not be a party to the merger if a merger took place. On June 14, 1972, the State Department of Financial Institutions for Utah *357 approved the merger agreement. The following day, Tracy Bancorp exercised its option. Petitioners tendered their 2,250 shares of American to an employee of the trust department of Tracy who was acting as an agent of Tracy Bancorp. The trust department was specifically authorized, under the option agreement, to deliver the certificates to Tracy or "its assigns." Petitioners endorsed their shares to Tracy Bancorp with the understanding that they were delivering the stock for sale to Tracy Bancorp. As consideration, petitioners received 2,250 shares of Valley American Corporation stock, checks totaling $42,660.20 and a seven-percent subordinated promissory note of Tracy Bancorp with the face value of $107,160.The notes were accepted as partial payment for 1,786 of the transferred shares. The notes were payable in five equal annual installments beginning June 15, 1973. They were not payable on demand and were not readily tradeable. Cash and Valley American Corporation stock were received in full payment for the 464 remaining shares. By exercising the option, the management of Tracy Bancorp hoped to acquire 100 percent of the American stock issued and outstanding. At the time *358 of purchase, Tracy Bancorp's management had not decided whether it would retain the American stock or proceed with the merger or American and Tracy. In fact, the management seriously considered not merging the two banks because of the advantages of retaining both a national and state charter when endeavoring to organize and operate branch banks. It was finally decided that those advantages were outweighed by the advantage of having both banks combined into a single corporate entity. This decision was not made until June 30, 1972, at which time the articles of merger were executed. Utah's Secretary of State subsequently approved the articles. In their income tax return for 1972, petitioners elected to treat the sale of 1,786 shares of American stock for which Tracy Bancorp's notes were received in partial payment as an installment sale. They reported their gain using the installment method. In his notice of deficiency, respondent determined that the entire gain should have been included in gross income for 1972. OPINION Section 453(b) allows the election of installment method reporting *359 of gains from casual sales of personal property on an installment plan. To qualify for installment reporting the payments received in the year of sale, exclusive of the purchaser's evidence of indebtedness, cannot exceed 30 percent of the selling price. Section 453(b)(2). Evidences of indebtedness of a third party, even a related entity, received by the buyer are considered payments in the year of sale. Caldwell v. United States,114 F. 2d 995 (3d Cir. 1940); Freeman v. Commissioner,303 F. 2d 580 (8th Cir. 1962). The issue in this case is whether the sale of 1,786 shares of American National Bank ("American") stock by petitioners qualifies as an installment sale. Respondent contends that Tracy Collins Bank and Trust Company ("Tracy") was the actual purchaser of petitioners' stock, and consequently the notes issued by Tracy Bancorp in payment of the shares were third party notes which must be treated as "payments" received in the year of sale. As a result, payments received in the year of sale exceed 30 percent of the selling price. On the other hand, petitioners contend that Tracy Bancorp was the purchaser of their stock and that the Tracy *360 Bancorp notes received as consideration may be excluded for purposes of calculating payments received in the year of sale because the notes constitute "evidence of indebtedness of the purchaser." We agree with petitioners.
On or about October 13, 1971, petitioners granted Tracy an option to purchase petitioners' American stock for $90 per share. The $90 was payable as follows: $6 cash; one share of Valley American Corporation worth $20; [2] and a $64 promissory note of Tracy. Concurrently, American and Tracy agreed to merge American into Tracy, subject to government approval.
On February 9, 1972, Tracy assigned the option to its holding company parent, Tracy Bancorp. On June 14, 1972, the merger of American into Tracy was approved. The next day Tracy Bancorp exercised the option, and on June 30, 1972, the two banks were merged. In support of their contentions that Tracy Bancorp was the actual purchaser and that there was substance to the sale, petitioners rely on Estate of Rogers v. Commissioner,1 T.C. 629 (1943), *361 affd. 143 F. 2d 695 (2d Cir. 1944), cert. denied 323 U.S. 780 (1944). In Estate of Rogers, corporation A was interested in acquiring certain property from the decedent's estate. For the purpose of acquisition only, corporation A formed corporation X. The property was sold to corporation X pursuant to an installment sale plan in return for notes issued by corporation X. The shares of X stock were then transferred to corporation A for cash. Although corporation A did not acquire the property, it did acquire control of the corporation to which the property was sold. We held that the notes were evidence of indebtedness of the purchaser, corporation X, and that the sale qualified for installment method reporting. Respondent argued that corporation X was nothing more than a "straw man" and that corporation A was the real purchaser. We found, however, that there was substance to the sale of property to corporation X in that the transaction had the business purpose of relieving corporation A of personal liability for the balance due on the sale. Here, respondent likewise contends that there was no substance to the sale of American stock to Tracy Bancorp *362 and that Tracy was the actual purchaser. The facts, however, do not support respondent's allegations. Under state banking law, Tracy was prohibited from owning the stock in American.See Utah Code Annotated (1953), sec. 7-3-32. Shile it was permissible for Tracy to own the option in issue, Tracy could not exercise it. [3] Cf. Commissioner v. First Security Bank of Utah,405 U.S. 394 (1972). Thus, the option was assigned to Tracy Bancorp, and petitioners were so notified.
*363 At the time the option was assigned to Tracy Bancorp on February 9, 1972, until the June 30, 1972 merger the management of Tracy Bancorp contemplated keeping the banks separate. Nothing in the merger agreement required that the merger actually take place. In fact, there were certain advantages, particularly with regard to restrictions on creating branch banks, for retaining both the national and state charters. Also, in obtaining the right to exercise the option, the management of Tracy Bancorp hoped to acquire 100 percent of the issued and outstanding shares of American.By holding all the shares of American, there would be no dissenting shareholder problems if and when Tracy Bancorp decided to merge its two subsidiaries. On the date of the sale the certificates were endorsed in favor of Tracy Bancorp.The trust department of Tracy was authorized, under the option agreement, to deliver the certificates to Tracy Bancorp. Petitioners, having been informed that the option was assigned to Tracy Bancorp, intended to sell their stock to Tracy Bancorp. In light of these facts, we conclude that the assignment of the option from Tracy to its holding company parent, Tracy Bancorp, *364 and the subsequent purchase by Tracy Bancorp of American stock were of substance and compelled by valid legal and business reasons. Respondent further asserts that the role of Tracy Bancorp in this case was transitory and that the transfers were constructed merely for tax avoidance purposes. Gregory v. Helvering,293 U.S. 465 (1935; Higgins v. Smith,308 U.S. 473 (1940). Unlike the taxpayers in Gregory v. Helvering and Higgins v. Smith, however, petitioners in this case had no control over the actions of the purchaser, Tracy Bancorp, or its subsidiary, Tracy.Nor did petitioners have control over what the remaining unrelated shareholders of American, who held more than 90 percent of the American stock, would do with their holdings. Although Owen W. Bunker had full knowledge of the merger agreement, the actual approval was beyond his control. Petitioners were not seeking to avoid taxes. Rather, they were seeking merely to take advantage of installment sale provisions specifically enacted by Congress for the purpose of providing relief to taxpayers who make casual sales of personal property. We are mindful of the Supreme Court's recent *365 admonishment in Frank Lyon Co. v. United States,435 U.S. 561, 583-584 (1978): In short, we hold that where, as here, there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax avoidance features that have meaningless labels attached, the Government should honor the allocations of rights and duties effectuated by the parties. We conclude that Tracy Bancorp was the actual purchaser of petitioners' stock and that the transfer should be given effect. Accordingly, we hold that the sale of American stock by petitioners to Tracy Bancorp meets the requirements of and qualifies for installment method reporting under section 453. [4]
We decide the only issue presented to us for petitioners. However, because of other issues disposed of by agreement of the parties, *366 Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. Petitioners and Tracy agreed that the Valley American Corporation stock had a fair market value of $20 per share and respondent does not contend to the contrary. We have accordingly so found as a fact.↩
3. Respondent argues that the merger of American into Tracy could not be effectuated if Tracy could not purchase the stock of American. Under Utah banking law, however, when a merger of a national bank into a state bank is contemplated, the merger agreement must contain "terms for the exchange of shares of the constituent banks for those of the resulting bank or of those of a bank holding company." Utah Code Annotated, (1953), sec. 7-6-3(3)↩. We note that the merger agreement in issue, which provided for the surrender of shares of American "in exchange" for $70 plus one share of Valley American Investment Company stock per share, was approved by the State. Such an exchange for merger purposes is not the equivalent of a "purchase" as this term is used by respondent where the purchaser would be free to hold the stock of another bank for resale.
4. Petitioners contend that they are entitled to attorneys' fees. This Court lacks jurisdiction to award attorneys' fees to petitioners. Key Buick Co. v. Commissioner,68 T.C. 178↩ (1977), on appeal (5th Cir. Aug. 15, 1977).